**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| DANIELLE THOMAS, | : | CIVIL ACTION |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| MICHAEL J. ASTRUE, | : | No. 2:08-cv-2294 |
| COMMISSIONER OF | : | |
| SOCIAL SECURITY, | : | |
| Defendant. | : | |

**MEMORANDUM RE:  SOCIAL SECURITY APPEAL**

Baylson, J.                                                                     **March 26, 2009**

Plaintiff, Danielle Thomas ("Thomas," "Plaintiff"), seeks judicial review of the decision of the Commissioner of the Social Security Administration ("Commissioner," "Defendant") denying her application for Supplemental Security Income benefits under Title XVI of the Social Security Act ("the Act"), 42 U.S.C. §§ 1381-1383(c) (2000).  Jurisdiction is established under § 1383(c)(3), which incorporates § 405(g) of the Act.  42 U.S.C. §§ 405(g), 1383(c)(3).  For the reasons that follow, the Court will grant Plaintiff's Motion for Summary Judgment.

I.      **Background and Procedural History**

A.      **Procedural History**

Plaintiff is a 31-year-old female who can communicate in English and has completed her General Educational Development ("GED").  (R. 18, 47, 59).  At all times relevant to this claim, Plaintiff was a "younger individual between the ages of 18 and 44."  20 C.F.R. § 416.963.

Plaintiff protectively filed this application for benefits on November 29, 2005.  (R. 17).

She had previously filed a Title XVI application on August 13, 1999, which was denied without appeal; a Title II application on February 25, 2005, which was given a technical disposition; and a Title XVI application on February 25, 2005, which was denied without appeal.  (R. 17).[1] Plaintiff's current application was initially denied by the Commissioner on May 15, 2006.  (R. 35).  Plaintiff, represented at the time, filed a timely request for a hearing before an Administrative Law Judge ("ALJ"), which was held on January 9, 2007 before ALJ Owen Katzman (R. 203-227).  The ALJ denied Plaintiff's application on March 7, 2007, finding that Plaintiff was not disabled as defined by the Act.  (R. 22).  Specifically, the ALJ found that Plaintiff's obesity combined with mild right knee osteoarthritis, hypertension, and diabetes mellitus were considered severe impairments, but these impairments did not meet or equal a listed impairment in 20 C.F.R. § 404, Subpt. P, App. 1.  (R. 23).  The ALJ then determined that Plaintiff could perform the full range of sedentary work, and based on her exertional capacity, age, education, and work experience, she was "not disabled" under 20 C.F.R. § 404, Subpt. P, App. 2, Medical-Vocational Rule 201.27.  (R. 23).

Plaintiff appealed the ALJ's decision, and the Appeals Council denied her request for review on April 3, 2008.  (R. 5).  Plaintiff subsequently filed a complaint in this Court seeking judicial review of the Commissioner's decision on May 20, 2008.  (Doc. 3).  Plaintiff filed this Motion for Summary Judgment (Doc. No. 7) on the appeal, which is presently before this Court.

### B.    Plaintiff's Work History, Medical Conditions, and Treatment

---

[1]The Record appears to contain an additional application for benefits in February 2004 with the alleged onset date of October 1, 2003 (R. 56), but the ALJ decision mentions only the 1999 and 2005 prior applications.

Plaintiff has no past relevant work experience.  (R. 23).  Her only prior employment was a three-month position as a telemarketer in 2001, from which she was laid off.  (R. 77, 207).

Plaintiff alleged the following impairments in her November 2005 application for benefits: asthma, high blood pressure and obesity, feet swelling, shortness of breath, and diabetes.  (R. 76).  She claimed an alleged onset date of November 29, 2005.  (R. 73).  In Plaintiff's appeal of her denial of benefits, she alleged a new diagnosis of sleep apnea beginning March 2006.  (R. 99-100).  In his decision, the ALJ stated that Plaintiff alleged the following impairments: obesity, obstructive sleep apnea, hypertension, diabetes mellitus, asthma, knee pain, and peripheral edema.[2]  (R. 18).

The Record establishes that Plaintiff is morbidly obese, with her highest recorded weight at 548 pounds in March and April of 2006.  (R. 126, 142, 148).  Plaintiff has consulted with several physicians regarding her ailments as reflected in the Record.  Plaintiff saw Dr. Fontanilla at the Philadelphia Department of Health clinic periodically between 2003 and 2006 for complaints including asthma, obesity, hypertension, diabetes, and sleep apnea.  (R. 116-24; 159-65).  Dr. Warren, of the Pennsylvania Bureau of Disability Determination, performed a disability examination of Plaintiff in April 2005 and determined that Plaintiff "has morbid obesity with secondary complications such as hypertension, fatigue and low back pain."  (R. 125-31).  In September 2005, Dr. Fontanilla performed a Pennsylvania Department of Public Welfare Employability Re-assessment Form, finding Plaintiff temporarily disabled from September 19, 2005 until August 1, 2006.  (R. 157-58).  In March 2006, Dr. DeLisser performed a CPAP

---

[2]The Record does not explain the discrepancy between the disabilities alleged in Plaintiff's application and the disabilities that the ALJ claimed Plaintiff alleged.

titration of Plaintiff to assess its effect on Plaintiff's obstructive sleep apnea.  (R. 139-46).  In April 2006, Plaintiff was examined by Dr. Nichols, who ordered an x-ray of Plaintiff's knee.  (R. 147-48).  Dr. Nichols stated that Plaintiff had a "history of morbid obesity as well as many of it's [sic] complications; including Diabetes, Sleep Apnea, Hypertension, and likely osteoarthritis." (R. 148).  The x-ray revealed "mild osteoarthritic changes involving the medial lateral joint compartments."  (R. 149).  Finally, Plaintiff saw Dr. Wood of the J. Edwin Wood Clinic between September 2006 and January 2007, who listed Plaintiff's active problems as HTN (hypertension), NIDDM (non-insulin-dependent diabetes mellitus), obstructive sleep apnea, asthma, and obesity. (R. 171-196; 184).  During this period, Plaintiff was taking metformin for diabetes and hydrochlorothiazide, which is used for edema and high blood pressure.  (R. 144, 147, 171).

Plaintiff received a Physical Residual Functional Capacity ("RFC") Assessment on May 20, 2005 from a Disability Determination Services ("DDS") examiner.  (R. 132-38).  Plaintiff had a second RFC performed by DDS on May 2, 2006.  (R. 151-56).  In April 2005, Dr. Warren performed a Medical Source Statement of Claimant's Ability to Perform Work-Related Physical Activities.  (R. 129-30).  In January 2007, Dr. Giron of the Wood Clinic performed a Medical Assessment of Ability to Do Work-Related Activities (Physical) of Plaintiff.  (R. 193-96).

## II.    <u>Jurisdiction and Standard of Review</u>

The Social Security Act provides for judicial review by this Court of any "final decision of the Commissioner of Social Security" in a disability proceeding.  42 U.S.C. § 405(g) (2000). A district court may enter a judgment "affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing."  <u>Id.</u>

On judicial review of the decision, the Commissioner's findings "as to any fact, if supported by substantial evidence, shall be conclusive." Id.  "Substantial evidence is 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion . . . .'" Rutherford v. Barnhart, 399 F.3d 546, 552 (3d Cir. 2005) (quoting Reefer v. Barnhart, 326 F.3d 376, 379 (3d Cir. 2003)).  Substantial evidence is "'more than a mere scintilla but may be somewhat less than a preponderance of the evidence.'"  Rutherford, 399 F.3d at 552 (quoting Ginsburg v. Richardson, 436 F.2d 1146, 1148 (3d Cir. 1971)).  In reviewing the record for substantial evidence, however, this Court must "not 'weigh the evidence or substitute [its own] conclusions for those of the fact-finder.'"  Rutherford, 399 F.3d at 552 (quoting Williams v. Sullivan, 970 F.2d 1178, 1182 (3d Cir. 1992)).  The substantial evidence standard "is deferential and includes deference to inferences drawn from the facts if they, in turn, are supported by substantial evidence." Schaudeck v. Comm'r of Social Sec. Admin., 181 F.3d 429, 431 (3d Cir. 1999).  Despite the deference given to administrative decisions regarding disability benefits, reviewing courts "retain a responsibility to scrutinize the entire record and to reverse or remand if the [Commissioner]'s decision is not supported by substantial evidence."  Morales v. Apfel, 225 F.3d 310, 317 (3d Cir. 2000) (quoting Smith v. Califano, 637 F.2d 968, 970 (3d Cir. 1981)).

 As for the legal standards applied in the case, this Court's review is plenary.  See Allen v. Barnhart, 417 F.3d 396, 398 (3d Cir. 2005).

## III.   Discussion

### A.   Social Security Disability Evaluation Process

In considering whether an individual is disabled, the Social Security Administration has laid down a five-step evaluation process for claimants seeking SSI benefits.  First, the ALJ

considers the claimant's work activity; if the claimant is currently engaging in substantial gainful activity, the claimant will not be considered disabled.  20 C.F.R. § 404.1520(a)(4)(i) (2008). Second, the ALJ considers whether the claimant has a "severe impairment" or "combination of impairments"; where the impairment or combination is not "severe," the claimant is determined to be not disabled.  20 C.F.R. § 404.1520(a)(4)(ii).  Third, the ALJ then considers whether the claimant's impairment "meets or equals" one of the pre-approved impairments in the Listing of Impairments.  20 C.F.R. § 404.1520(a)(4)(iii).  Where the impairment, however, is not pre-approved, the ALJ next considers whether the claimant's residual functional capacity permits the claimant to perform any of her past work history; where the claimant can perform any of her prior jobs, the claimant is not disabled.  20 C.F.R. § 404.1520(a)(4)(iv).  Finally, at the fifth step, the ALJ considers the claimant's residual functional capacity, age, education, and work experience to determine whether Plaintiff would be capable of returning to the workforce.  20 C.F.R. § 404.1520(a)(4)(v).  While the claimant has the burden on each of the first four steps, the Commissioner bears the burden of proof on the fifth step.  Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987).

### B.    ALJ's Findings

The ALJ proceeded through the five-step evaluation process of Plaintiff.  First, the ALJ concluded that Plaintiff has not engaged in substantial gainful activity since the alleged onset of disability.  (R. 23).  Second, the ALJ found that Plaintiff's obesity, in combination with mild right knee osteoarthritis, hypertension, and diabetes mellitus were considered "severe" based on 20 CFR § 416.920(c).  (R. 23).  However the ALJ found that these impairments did not meet or medically equal a listed impairment in Appendix 1, Subpart P of the Regulations.  (R. 23).

-6-

The ALJ found that Plaintiff's allegations regarding her limitations were not totally credible. (R. 23).   The ALJ stated that there was no clinical or laboratory evidence of asthma in the Record. (R. 19).  As to Plaintiff's diabetes, the ALJ stated that Plaintiff's blood sugar readings were elevated but her diabetes was non-severe, since there was no indication of end organ damage, significant or persistent symptoms and no indication that diabetes affected Plaintiff's ability to function.  (R. 19).  The ALJ also found Plaintiff's hypertension to be nonsevere because there was no end organ damage or significant and persistent symptoms but noted that Plaintiff had reported occasional headaches.  (R. 19).  The ALJ stated that Plaintiff's examinations for edema revealed varying degrees of edema between 2005 and 2006.  (R. 19).  As to Plaintiff's knee impairment, the ALJ stated it was not severe in isolation based on the mild osteoarthritis revealed in Plaintiff's x-ray and the full range of motion observed by Dr. Warren. (R. 19).  Finally, as to fatigue and daytime somnolence caused by obstructive sleep apnea, the ALJ concluded that Plaintiff has been "prescribed an effective treatment with which she chooses to be only partially compliant."  (R. 20).

The ALJ next assessed Plaintiff's RFC and concluded that Plaintiff can perform full-time sedentary work, consisting of lifting, carrying, pushing or pulling up to ten pounds at a time and small objects frequently; walking or standing for up to two hours per workday; and sitting for up to six hours per workday.  (R. 21).  The ALJ determined this based on Plaintiff's testimony that she could walk half a block, stand for twenty minutes, push something as heavy as a shopping cart, lift up to a gallon of milk, and sit for one to two hours.  (R. 21).  In addition, the ALJ noted that Plaintiff basically sits all day and all night, since standing and lying down are uncomfortable. (R. 21).  The ALJ credited the DDS examiner's RFC and did not credit the opinions of Dr.

Fontanella, Dr. Wood, and Dr. Giron.  (R. 21).  Based on Plaintiff's age, education, past work experience, and ability to perform the full range of sedentary work, the ALJ found that Plaintiff was "not disabled" pursuant to Medical-Vocational Rule 201.27 and therefore is not under a disability as defined by the Social Security Act.  (R. 22).

### C.    Plaintiff's Objections

Plaintiff raises three objections to the ALJ's findings.  First, Plaintiff argues that the ALJ erred in evaluating Plaintiff's individual impairments as non-severe and that this finding is not supported by substantial evidence.  Second, Plaintiff claims that the ALJ erred in finding that Plaintiff's impairments did not meet or equal a pre-approved impairment listing in step three of the analysis, especially with regards to Plaintiff's obesity.  Third, Plaintiff states that she has shown a prima face case of disability and the ALJ did not carry his burden to rebut this finding at step five.

### D.    ALJ's Finding that Individual Impairments were Non-Severe

Plaintiff claims that the ALJ's conclusion that each of Plaintiff's impairments were independently non-severe is not supported by substantial evidence.  In step two of the disability evaluation process, ALJ Katzman determined that Plaintiff's morbid obesity combined with mild osteoarthritis of the right knee, hypertension, and diabetes mellitus were "severe" within the meaning of the Regulation 20 C.F.R. § 416.920(c).  (R. 19, 23).  However the ALJ went on to conclude that each of Plaintiff's impairments in isolation were non-severe.  (R. 23).  An impairment is non-severe if it does not significantly limit an individual's ability to perform basic work activities.  20 C.F.R. § 416.921(a).  Basic work activities include physical functions such as

walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling.  20 C.F.R. § 416.921(b)(1).

The step two determination "requires a careful evaluation of the medical findings that describe the impairment(s) (i.e., the objective medical evidence and any impairment-related symptoms), and an informed judgment about the limitations and restrictions the impairment(s) and related symptom(s) impose on the individual's physical and mental ability to do basic work activities."  SSR 96-3p, 1996 WL 374181, at *2.  "The burden placed on an applicant at step two is not an exacting one."  McCrea v. Comm'r of Soc. Sec., 370 F.3d 357, 360 (3d Cir. 2004).  "The step-two inquiry is a de minimis screening device to dispose of groundless claims."  Id. (quoting Newell v. Comm'r of Soc. Sec., 347 F.3d 541, 549 (3d Cir. 2003)).  This Court will evaluate whether the ALJ's findings as to each of Plaintiff's claimed impairments are supported by substantial evidence.

Plaintiff first challenges the ALJ's finding that her documented diabetes mellitus is non-severe because there is no evidence of end organ damage or significant and persistent symptoms.[3] (Pl.'s Br. 6).  "End organ damage" is defined as damage to the heart, brain, kidneys or eyes. Wilkerson v. Sullivan, 727 F.Supp. 925, 932 (E.D. Pa. 1989), overruled on other grounds, Petition of Sullivan, 904 F.2d 826 (3d Cir. 1990).  Plaintiff claims that in fact she has been diagnosed with diabetic cardiomyopathy, which has similar symptoms to heart failure.  (Pl.'s Br. 6-7).  However the only medical evidence in the Record of diabetic cardiomyopathy is Dr. Warren's note on medical data he considered in performing his evaluation, which included a

---

[3]The ALJ also discussed Plaintiff's alleged asthma and depression, finding that there was no evidence to support these claims of impairment.  Plaintiff does not challenge these findings.

2002 discharge summary from Mercy Hospital showing a discharge diagnosis of cardiomyopathy.  This summary is over three years prior to Plaintiff's alleged onset date, and Warren's April 2005 evaluation of Plaintiff states that Plaintiff's heart had a "Regular rate. Normal S1 and S2.  Soft without murmur, gallops or rub."  (R. 127).  The Record states that Plaintiff was not diagnosed with diabetes until 2006.  (R. 147).  Plaintiff takes medication for her diabetes but not insulin.  (R. 211).  Without additional evidence concerning how Plaintiff's diabetes limits her ability to perform basic work activities, the ALJ's determination that the impairment was non-severe is supported by substantial evidence.  See Sassone v. Comm'r of Soc. Sec., 165 Fed.Appx. 954 (3d Cir. 2006) (affirming ALJ's conclusion that claimant's diabetes and hypertension were not severe impairments in part because no medical reports documented end organ damage or quantifiable complications).

Plaintiff next argues that the ALJ's finding that her hypertension is non-severe is in error based on the 2002 hospital discharge summary reviewed by Dr. Warren, which documents congestive heart failure.  (Pl.'s Br. 8).  As stated above, this summary is three years prior to Plaintiff's alleged onset date.  Dr. Warren did assess that Plaintiff had hypertension as a secondary complication of her morbid obesity and noted she is being treated for it.[4]  (R. 125, 128).  Dr. Nichols also found that hypertension was a complication of Plaintiff's morbid obesity.  (R. 148).  However, the only evidence of related heart complications is from Warren's notes of the 2002 hospital report.  (R. 128).  There is no evidence in the Record suggesting that Plaintiff's

---

[4]Plaintiff claims that Dr. Warren diagnosed her with pulmonary hypertension.  (Pl.'s Br. 8).  However, Dr. Warren's notation to this affect appears to be related to her 2002 Mercy Hospital discharge diagnosis, and therefore it is not an independent diagnosis by Dr. Warren.  (R. 127-28).

hypertension limits her ability to perform basic work activities.  Therefore the ALJ's determination is supported by substantial evidence.

Plaintiff further challenges the ALJ's discussion of her ankle edema.  The ALJ noted that Plaintiff's six examinations revealed varying degrees of edema between September 2005 and November 2006, including three examinations showing no edema and one examination revealing trace edema.  (R. 19).  There is medical evidence in the Record stating that Plaintiff has some edema.  (R. 148, 171).  However, Plaintiff has pointed to no evidence that her edema limits her basic work activities, so the ALJ's finding as to edema is supported by substantial evidence.

Plaintiff next argues that the ALJ's determination regarding her knee arthritis is in error.  As the Plaintiff notes, an x-ray revealed that Plaintiff had mild osteoarthritis, and Dr. Warren found that Plaintiff's knees had full extension and flexion.  (R. 127, 149).  Plaintiff argues that Dr. Warren's finding that she can only stand or walk one hour or less in a workday shows that her knee impairment is severe.  However Dr. Warren's finding does not relate specifically to her knee impairment but instead to her overall ability to do work-related activities.  This evidence should be considered at step five of the analysis, not step two.  Plaintiff has pointed to no evidence in the Record suggesting that her knee osteoarthritis constituted a severe impairment.

Finally, Plaintiff complains that the ALJ erred in finding that her obstructive sleep apnea and daytime somnolence were not a severe impairment since the CPAP machine was an effective treatment.  As noted by the Defendant, a CPAP titration study of Plaintiff performed in March 2006 found that it was effective in controlling her sleep apnea.  (R. 139).  However, at an examination with Dr. Wood in September 2006, the doctor's treatment notes state: "uses CPAP at night - no success with this."  In a November 2006 examination, Dr. Wood noted that "uses

CPAP machine @ home. Does not use everyday, when she has SOB [shortness of breath]." (R. 171). Plaintiff testified that the machine distracted her from sleeping "because it moves all over your face" and that she takes it off when this happens. (R. 220). Plaintiff further testified to falling asleep during the day for about half an hour at a time, five or six times a day. (Id.)

Plaintiff argues that the ALJ had an affirmative obligation to question her concerning her "good reason" for not complying with the prescribed treatment under Regulation § 416.930 so as not to preclude a disabled finding. The Regulation states: "If you do not follow the prescribed treatment without a good reason, we will not find you disabled . . . ." 20 C.F.R. § 416.930(b). The ALJ has a duty to inquire into failure to follow treatment:

> However, the adjudicator must not draw any inferences about an individual's symptoms and their functional effects from a failure to seek or pursue regular medical treatment without first considering any explanations that the individual may provide, or other information in the case record, that may explain infrequent or irregular medical visits or failure to seek medical treatment.

Newell v. Comm'r of Soc. Sec., 347 F.3d 541, 547 (3d Cir. 2003) (citing SSR 96-7p). Here Plaintiff complained of discomfort and ineffectiveness of the CPAP machine. The ALJ found that the treatment was effective, but did not address Plaintiff's complaints of discomfort in his decision. (R. 20). Therefore the ALJ's conclusion that Plaintiff's sleep apnea is not severe is not supported by substantial evidence. See Fahy v. Astrue, 2008 WL 2550594, at *7 (E.D. Pa. 2008) ("Because the ALJ did not discuss any of the explanations pertaining to Plaintiff's difficulty complying with medical treatment, the Court cannot determine whether they were considered as required by SSR 96-7p.").

In summary, the ALJ's findings that Plaintiff's individual stated impairments were non-severe are supported by substantial evidence, except for the ALJ's failure to fully consider

-12-

whether treatment for Plaintiff's sleep apnea was effective.  However because the ALJ found that

Plaintiff had a combined impairment, the ALJ properly went on to consider step three.

### E.      ALJ's Finding that Plaintiff's Impairments Did Not Meet or Equal a Listing

In considering whether Plaintiff's impairments met or equaled a listing in step three, the

ALJ stated, prior to his discussion of Plaintiff's individual impairments:

> The medical evidence indicates that claimant suffers from morbid obesity in
> combination with mild osteoarthritis of the right knee, hypertension, and diabetes
> mellitus, impairments that are 'severe' within the meaning of the Regulations but
> not 'severe' enough to meet or medically equal, either singly or in combination,
> one of the impairments listed in Appendix 1, Subpart P, Regulations No. 4.

(R. 19).  Regulation number four concerns cardiovascular impairment listings.  After discussing

each of Plaintiff's alleged impairments individually and finding none severe, but finding the

combined impairment severe, the ALJ again concluded:  "The severity of this impairment does

not meet or equal any listing."  (R. 20).   Under 20 C.F.R. § 416.923, the Commission must

"consider the combined effect of all of your impairments without regard to whether any such

impairment, if considered separately, would be of sufficient severity."  In this case, the ALJ did

not analyze the combined impairment nor state which specific listings that impairment did not

meet or equal.  (R. 20).

As her initial objection, Plaintiff argues that the ALJ failed to analyze obesity properly in

accordance with SSR 02-1p, which specifically addresses "Evaluation of Obesity."  Obesity is no

longer a Listed Impairment.  SSR 02-1p, 2000 WL 628049, at *1.  However, obesity is still

considered a medically determinable impairment and its effects on other impairments should be

considered.  Id.  Therefore, "an individual with obesity 'meets' the requirements of a listing if he

or she has another impairment that, by itself, meets the requirements of a listing. We will also

find that a listing is met if there is an impairment that, in combination with obesity, meets the requirements of a listing." Id. at *5.  Further, obesity by itself can be medically equivalent to a listed impairment.  Id.  Plaintiff does not specify which listed impairments she claims to meet when considered in combination with obesity, or otherwise.  However, the ALJ did consider Plaintiff's massive obesity in combination with other impairments as a severe impairment and stated that this combined impairment did not meet or equal a listing.  Therefore, the ALJ properly considered obesity in accordance with SSR 02-1p.

Plaintiff next argues that the ALJ's step three analysis was conclusory and inconsistent with the ALJ's obligation.  (Pl.'s Br. 13).  The Court agrees.  It is the ALJ's responsibility to decide the legal question of whether a Listing is met or equaled.  SSR 96-6p, 1996 WL 374180, at *3.  However, the ALJ is required to set forth reasons for his decision, including its determination that a claimant's impairments do not meet or equal a Listed Impairment.  Burnett v. Comm'r of Soc. Sec. Admin., 220 F.3d 112, 119 (3d Cir. 2000) (citing Cotter v. Harris, 642 F.2d 700, 704-705 (3d Cir. 1981)) (finding that the ALJ's conclusory statement that claimant's impairment did not equal a listing was "beyond meaningful judicial review" and insufficient). The burden is on the claimant to present medical findings that show his or her impairment matches a listing or is equal in severity to a listed impairment.  Williams v. Sullivan, 970 F.2d 1178, 1186 (3d Cir.1992).  However, it is "within the realm of the ALJ's expertise to determine the closest applicable listed impairment, based on the medical evidence."  Burnett, 220 F.3d at 120 n.2.  Although Burnett suggested that the ALJ must "identify the relevant listed impairment(s)" it considered in step three, id., the Third Circuit clarified in Jones v. Barnhart that "Burnett does not require the ALJ to use particular language or adhere to a particular format in

-14-

conducting his analysis."  364 F.3d 501, 504 (3d Cir. 2004); see also Scatorchia v. Comm'r of Soc. Sec., 137 Fed.Appx. 468, 471 (3d Cir. 2005) (finding that the ALJ met the Jones requirement at step three without identifying the relevant Listing).  Instead, Burnett requires that there "there is sufficient development of the record and explanation of findings to permit meaningful review."  Id.

The ALJ's decision does not constitute sufficient development of the record and explanation of findings.  Instead, ALJ Katzman's two repetitive, conclusory sentences regarding his step three analysis are comparable to the conclusory sentence that the Third Circuit rejected in Burnett.  Defendant argues, based on Jones, that the ALJ's decision when read in its entirety provides sufficient explanation to provide meaningful review by discussing the medical evidence, treatment history, testimony, and Plaintiff's activities.  (Def.'s Br. 14-15).  In support, Defendant cites multiple unpublished Third Circuit cases that uphold the ALJ's step three determination based on the ALJ's decision as a whole.

However, this Court is not persuaded by the cases cited by Defendant.  Unlike Ochs v. Comm'r of Soc. Sec., 187 Fed.Appx. 186, 189 (3d Cir. 2006), where the court found it was apparent which Listings the ALJ considered, in the instant case it is unclear which Listings the ALJ considered in finding the combined impairment non-severe.  ALJ Katzman mentions Regulation No. 4 (cardiovascular system) but does not identify a specific cardiovascular impairment Listing, nor does he appear to discuss the relevant evidence corresponding to a specific Listing.  In addition, diabetes mellitus (9.08) and sleep apnea (3.00(H)) do not appear in Regulation No. 4, so they do not appear to have been considered in the ALJ's conclusory step three analysis.  Further, Defendant cites Cop v. Comm'r of Soc. Sec., 226 Fed. Appx. 203, 208

(3d Cir. 2007) and <u>Lopez v. Comm'r of Soc. Sec.</u>, 270 Fed. Appx. 119 (3d Cir. 2008), but in those cases the ALJ identified the relevant Listings in his opinion. Finally, the Third Circuit in <u>Rembert v. Comm'r of Soc. Sec.</u>, 142 Fed. Appx. 570 (3d Cir. 2005) upheld the ALJ's step three determination, despite the fact that the ALJ did not focus on a listed impairment, based on the ALJ's discussion of the medical evidence and the claimant's testimony supporting its determination.

Although the ALJ in this case analyzed the medical record as to each of Plaintiff's individual impairments and as to Plaintiff's RFC, he failed to consider the evidence and effects of Plaintiff's combined severe impairment. Instead, the ALJ simply stated that a severe combined impairment existed and then proceeded to analyze the RFC evidence. This analysis contravenes Social Security Regulations that the ALJ must consider Plaintiff's combined impairment at step three. 20 C.F.R. § 416.923; <u>see also</u> <u>Cooper v. Comm'r of Soc. Sec.</u>, 268 Fed. Appx. 152, 156 (3d Cir. 2008). In essence, the ALJ's opinion is not sufficient to afford meaningful judicial review, since it is unclear what factors the ALJ considered in finding that Plaintiff's combined impairment did not meet or equal a listing. Accordingly, this Court directs the ALJ on remand to state the evidence specifically considered in finding whether or not Plaintiff's combined severe impairment meets or equals a Listing. Specific reference to the Listings considered, although not required, would greatly aid this Court in reviewing the ALJ's step three analysis. <u>See</u> <u>Poulos v. Comm'r of Soc. Sec.</u>, 474 F.3d 88, 95 (3d Cir. 2007) (upholding an ALJ's step three analysis in part because the ALJ explicitly stated which Listings he considered related to the claimant's obesity).

  **F.**  **ALJ's Finding as to Plaintiff's Residual Functional Capacity**

Plaintiff's final argument is that the ALJ erred in finding that the Plaintiff had the RFC to do the full range of sedentary work.[5]  Plaintiff asserts that the ALJ did not consider Dr. Warren's assessment of Plaintiff's ability to perform work-related physical activities and instead relies on the RFC performed by a "state agency lay reviewer," therefore improperly evaluating the expert opinions.  In her Reply brief, Plaintiff also argues that the ALJ improperly dismissed Dr. Giron's medical assessment.  Further, Plaintiff claims that the ALJ improperly discounted several doctor's opinions regarding Plaintiff's eligibility for welfare benefits.

The ALJ is required to evaluate every medical opinion received.  20 C.F.R. § 404.1527(d).  As the Third Circuit has stated: "A cardinal principle guiding disability eligibility determinations is that the ALJ accord treating physicians' reports great weight, especially 'when their opinions reflect expert judgment based on a continuing observation of the patient's condition over a prolonged period of time.'"  Morales, 225 F.3d 310, 317 (3d Cir. 2000) (quoting Plummer v. Apfel, 186 F.3d 422, 429 (3d Cir.1999)); see also Rocco v. Heckler, 826 F.2d 1348, 1350 (3d Cir. 1987).  The court went on to say that where the opinion of a treating physician conflicts with that of a non-treating physician, "the ALJ may choose whom to credit but 'cannot reject evidence for no reason or for the wrong reason.'"  Morales, 225 F.3d at 317 (quoting Plummer, 186 F.3d at 429).  The ALJ must consider the treating physician's assessment, and in choosing to reject it, "an ALJ may not make 'speculative inferences from medical reports' and may reject 'a treating physician's opinion outright only on the basis of contradictory medical evidence' and not due to his or her own credibility judgments, speculation or lay opinion."

---

[5]Specifically, the ALJ found that Plaintiff "can lift, carry, push, and pull up to ten pounds at a time and small objects frequently, walk or stand for up to two hours per workday, and sit for up to six hours per workday."  (R. 21).

Morales, 225 F.3d at 317 (quoting Plummer, 186 F.3d at 429).  Finally, where there is conflicting

evidence, the ALJ must not only discuss the evidence that supports his or her determination but

also must explain the evidence that he or she rejects.  Cotter v. Harris, 642 F.2d 700, 705 (3d Cir.

1981) (quoting Dobrowolsky v. Califano, 606 F.2d 403 (3d Cir. 1979)); see also Wisniewski v.

Comm'r Social Sec., 210 Fed.Appx. 177 (3d Cir. 2006) (clarifying Cotter).

    In the instant case, there are four assessments of Plaintiff's RFC, two by a DDS examiner,

and two by physicians.  The two DDS RFC assessments find that Plaintiff may perform sedentary

work.[6]  Plaintiff's May 20, 2005 RFC assessment stated that Plaintiff can occasionally lift and/or

carry up to 20 lbs., frequently lift and/or carry up to 10 lbs., stand and/or walk about six hours in

an eight-hour work day, and sit about six hours in an eight-hour work day.  (R. 133).  Plaintiff's

second RFC assessment on May 2, 2006 stated that Plaintiff can occasionally lift and/or carry up

to 10 lbs., frequently lift and/or carry less than 10 lbs., stand and/or walk two hours in an eight-

hour work day, and sit about six hours in an eight-hour work day.  (R. 152).  However, the

medical assessment performed by Dr. Warren in April 2005 does not support a finding that

Plaintiff can perform sedentary work.[7]  Dr. Warren found that Plaintiff can occasionally lift

and/or carry up to 2-3 lbs., stand and/or walk one hour or less in an eight-hour work day, and sit

less than six hours in an eight-hour work day.  (R. 129).  Dr. Giron's January 2007 assessment

---

    [6]Sedentary work involves lifting no more than ten pounds at a time with occasional
standing or walking totaling about two hours of an eight-hour workday and sitting approximately
six hours of an eight-hour day.  SSR 83-10, 1983 WL 31251 at *5.

    [7]Dr. Warren's assessment predates Plaintiff's alleged onset date.  However the ALJ relied
on other parts of Dr. Warren's exam in its decision, and the assessment only predates the alleged
onset date by seven months.  Further, Defendant has not argued that Dr. Warren's assessment
should not be considered.  Therefore the Court will consider it as relevant medical evidence.

also does not support a finding of sedentary work, stating Plaintiff can occasionally lift and/or carry up to 1 lb., stand and/or walk about one to two hours in an eight-hour work day, and sit three to four hours in an eight-hour work day.  (R. 194).  Dr. Giron states that this level of functional capacity has existed for the previous six years.  (R. 196).

The ALJ's RFC assessment does not satisfy the ALJ's obligation under the Regulations and case law.  The ALJ failed to consider Dr. Warren's assessment whatsoever in determining that Plaintiff could perform the full range of sedentary work, although he considers Dr. Warren's exam as to Plaintiff's knee pain.  (R. 19).  Although Dr. Warren does not appear to be a treating physician of Plaintiff (Dr. Warren's Report was for the purposes of the Pennsylvania Bureau of Disability Determination), Dr. Warren's opinion is medical evidence and therefore must be considered pursuant to 20 C.F.R. § 404.1527(d).  The ALJ is obligated to explain relevant evidence that he rejects, and here he has not done so.

In addition, the ALJ discounted Dr. Giron's assessment by stating that the clinic's notes and the entire medical file did not "corroborate[ ] inability to tolerate the rigors of a sedentary job."  Although the ALJ claims that Dr. Giron did not appear to be a treating physician, Dr. Giron's clinic, the J. Edwin Wood Clinic, did treat Plaintiff several times in 2006.  (R. 166-96).  Therefore, the ALJ may reject treating physician medical evidence only with contradictory medical evidence and not based on credibility judgments.  Morales, 225 F.3d at 317 (quoting Plummer, 186 F.3d at 429).  Here it is not clear what part of Plaintiff's "entire medical file" the ALJ found to contradict Dr. Giron's opinion, besides the ALJ agreeing with the State agency lay reviewer's finding that Plaintiff could "handle sedentary exertion."  (R. 21).  The ALJ states that

the clinic's treatment notes were "cursory" but does not discredit its specific findings, besides

stating Plaintiff's diabetes is "relatively benign."  (R.21).

Based on the ALJ's failure to appropriately consider the medical evidence in evaluating

Plaintiff's RFC, this Court will remand for further consideration of this issue.[8]

Although this Court is not required to determine whether the ALJ's RFC determination

was based on substantial evidence because a remand is necessary for proper consideration of the

medical evidence, the Court makes the additional observations concerning the ALJ's RFC

analysis.  Plaintiff's testimony that she can not do household chores and can only shop with rest,

that she can only walk half a block, stand for twenty minutes, push something as heavy as a

shopping cart, lift up to a gallon of milk (about 8 pounds), and sit for one to two hours, seems to

support an RFC that is less than the full range of sedentary work.  (R. 20-21, 211-13).  Plaintiff

further testified that she could not bend over to pick up a piece of paper.  (R. 218).  In order to

find that the ALJ's RFC conclusion is supported by substantial evidence, the ALJ must explain

its assessment of Plaintiff's RFC beyond finding that Plaintiff has an "ability to sit" and "work

full time at a sitting job."  (R. 21).  A full range of sedentary work requires more than just sitting.

20 C.F.R. § 416.967(a) ("Although a sedentary job is defined as one which involves sitting, a

---

[8]The ALJ also rejected state welfare re-assessments by Plaintiff's treating physicians Dr.
Fontanella (stating that Plaintiff was temporarily disabled from 9/19/05 to 8/1/06 due to morbid
obesity, hypertension, and asthma (R. 158)) and Dr. Wood (stating that Plaintiff was temporarily
disabled from 9/21/06 to 3/21/07 due to morbid obesity, hypertension, and diabetes mellitus (R.
200)).  State welfare assessments are relevant to a disability determination, though not binding.
See Fowler v. Califano, 596 F.2d 600, 603 (3d Cir. 1979) ("Although findings by other agencies
are not binding on the Secretary, they are entitled to weight and must be considered.").
The ALJ supports his rejection of this medical evidence with specific contradictory
evidence concerning the alleged impairments, so the Court does not find error with this finding.

certain amount of walking and standing is often necessary in carrying out job duties."). The ALJ

relied in part on the fact that Plaintiff had previously worked as a telemarketer but was fired due

to her hypersomnolence, which can now be resolved by the CPAP. (R. 21). However Plaintiff

held this job in 2001, four years before her alleged onset of disability, so it is of minimal

relevance to Plaintiff's RFC as of 2005. As Plaintiff stated in her application questionnaire, she

has gained 150 lbs. in the past two years, so her physical condition has changed since 2001. (R.

86). In addition, Plaintiff testified at her hearing that she would no longer be able to perform her

previous telemarketing job. (R. 207). For the above reasons, the ALJ should carefully review

these conclusions on remand.

    Finally, Plaintiff argues that she has several non-exertional limits: shortness of breath

while at rest, daytime somnolence, and pain, which preclude the ALJ's reliance on the grids.

(Pl.'s Br. 10 n. 2). Although Plaintiff does not argue this, obesity itself also can be a non-

exertional limit. See Poulos v. Comm'r of Soc. Sec., 474 F.3d 88, 95 (3d Cir. 2007) (citing Lucy

v. Chater, 113 F.3d 905, 909 (8th Cir. 1997)). Plaintiff alleged shortness of breath and obesity in

her initial application for benefits. (R. 76). In addition, there are numerous references to

shortness of breath in the Record, including in the medical evidence and in Plaintiff's testimony

to the ALJ. (R. 125, 157, 171, 194, 208). For example, on a visit to the J. Edwin Wood Clinic

on November 30, 2006, the treatment notes state: "Pt. [patient] c/o [complains of] SOB

[shortness of breath] for 5 days; occurs mainly on exertion, but also @ rest." (R. 171). And in

Dr. Giron's medical assessment of Plaintiff, she wrote "looks SOB all time." (R. 195). Despite

this evidence, the ALJ did not mention Plaintiff's alleged shortness of breath limitation in his

opinion, nor did he mention any other non-exertional limits. In addition, the ALJ did not

question the vocational expert at Plaintiff's hearing about whether jobs existed in the national economy based on Plaintiff's alleged non-exertional limits. (R. 224-25). Instead, the ALJ based his finding of non-disability solely on the Medical Vocational Guidelines ("grids"), 20 C.F.R. § 404, Subpt. P, App. 2 § 201.27. The ALJ can not rely on the grids to determine that Plaintiff is not disabled where the Plaintiff has non-exertional limits. Sykes v. Apfel, 228 F.3d 259, 267-71 (3d Cir. 2000). Even though an ALJ may determine that an impairment is non-severe at step two, he or she is must address all limitations at step five. Burnett, 220 F.3d at 122 ("[T]he ALJ must consider the combined effect of multiple impairments, regardless of their severity." (citing 20 C.F.R. § 404.1545)). Therefore, the ALJ erred in not considering Plaintiff's alleged non-exertional limits in its step five analysis and in relying on the grids to find Plaintiff not disabled.

## V.    <u>Conclusion</u>

Because the record is not fully developed at steps two, three, and five, this Court grants Plaintiff's Motion for Summary Judgment and remands the case for further proceedings in accordance with this opinion.

        An appropriate Order follows.

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| DANIELLE THOMAS, | : | CIVIL ACTION |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| MICHAEL J. ASTRUE, | : | No. 2:08-cv-2294 |
| COMMISSIONER OF | : | |
| SOCIAL SECURITY, | _____: | |
| _____Defendant._____: | | |

**<u>ORDER</u>**

AND NOW, this _____26th_____ day of March, 2009, upon careful consideration of Plaintiff Danielle Thomas's Motion for Summary Judgment and review of the Record, it is hereby ORDERED that:

(1)    Plaintiff's Motion for Summary Judgment (Doc No. 7) is GRANTED;

(2)    The case is remanded for further administrative proceedings not inconsistent with this opinion pursuant to the fourth sentence of 42 U.S.C. § 405(g); and

(3)    The clerk shall mark this case CLOSED for statistical purposes.

BY THE COURT:

/s Michael M. Baylson

_____

Michael M. Baylson, U.S.D.J.

O:\CIVIL 07-08\08-2294 Thomas v. Astrue\Memo re MSJ.wpd